# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

TERRY CHEEK, et al.,                )
                                    )
          Plaintiffs,       )
                                    )
vs.                                 )    Case No. CIV-13-116-M
                                    )
HALLIBURTON ENERGY SERVICES,        )
INC.,                               )
                                    )
          Defendant.        )

## ORDER

Before the Court is defendant Halliburton Energy Services, Inc.'s ("HESI") Motion for Summary Judgment on the Loss of Prospective Business Profits Claim of Plaintiff Ann Thomas, filed April 30, 2015. On May 21, 2015, plaintiff Ann Thomas ("Mrs. Thomas") filed her response, and on May 28, 2015, HESI filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.    Introduction

Mrs. Thomas alleges that, as a result of operations at HESI's Osage Road site ("Site") from the mid-1960s until 1991, the groundwater at the Site became contaminated with perchlorate. Mrs. Thomas owns approximately 80 acres of land near the Site. Mrs. Thomas alleges that perchlorate has migrated offsite to the groundwater beneath her property.

Over the course of several decades, the Thomas family operated a horse raising and training facility on the property where they trained many horses, including a number of prominent racehorses. The business tailed-off after Mrs. Thomas' husband, Normie Thomas, passed away in 2003. Mrs. Thomas' son, Tim Thomas, later acquired an adjoining approximately 40 acre tract, and he began work to restore the properties so the family could resume their horse training activities.

Mrs. Thomas alleges that the migration of perchlorate has impaired her ability to restore the property to its former use as a horse training facility.

Mrs. Thomas also alleges that in late 2011, she received a proposal from another horse trainer to rent her horse training facility for $2,500 per month, but after the trainer learned of the problems with the water caused by the perchlorate pollution, she backed out of the deal. Mrs. Thomas further alleges that up until September of 2011, she continued to rent horse stalls to others, including another horse trainer, Curtis Alpers. Mrs. Thomas alleges that Mr. Alpers had kept horses at the Thomas ranch for many years, but after the news of the perchlorate pollution became public in August of 2011, Mr. Alpers pulled his horses from the property in September of 2011. Mrs. Thomas states that she seeks to recover for this loss of rental income.

HESI now moves for summary judgment on Mrs. Thomas' claim for loss of prospective business profits.

## II.     Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden

of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.   Discussion

HESI asserts that it is entitled to summary judgment as to Mrs. Thomas' claim for loss of prospective business profits because Mrs. Thomas does not have an "established business," and even if she did, the profits therefrom are not reasonably ascertainable. HESI further asserts that it is entitled to summary judgment because Mrs. Thomas cannot demonstrate the "fact of damage" with "reasonable certainty." Finally, HESI asserts that it is entitled to summary judgment because Mrs. Thomas does not have any evidence to enable an estimate of damage based on judgment instead of guesswork.

Under Oklahoma law,

> [w]here the loss of anticipated profits is claimed as an element of damages, the business claimed to have been interrupted must be an established one, and it must be shown that it has been successfully conducted for such a length of time and has such a trade established that the profits therefrom are reasonably ascertainable.

*Plummer v. Fogley*, 363 P.2d 238, 241 (Okla. 1961) (internal citations omitted). *See also Dieffenbach v. McIntyre*, 254 P.2d 346, 349 (Okla. 1952).[1]  Additionally,

---

[1] In her response, based upon *Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165 (10th Cir. 2008), Mrs. Thomas contends that the established business requirement is no longer the law in Oklahoma. Mrs. Thomas, however, does not cite to any Oklahoma Supreme Court decision abandoning the established business requirement, and in *Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269 (10th Cir. 2012), a decision issued four years after *Specialty Beverages*, the Tenth Circuit

3

> Oklahoma law prohibits recovery of damages that are uncertain and speculative. As a general rule, anticipated profits are too remote, speculative, and dependent upon uncertainties and changing circumstances to warrant a judgment for their loss. To recover damages for lost profits, a plaintiff must therefore demonstrate the fact of damage . . . with reasonable certainty, and the amount of damages may not be based upon mere speculation and conjecture.

*Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1267 (10th Cir. 2007) (internal quotations and citations omitted).

In the case at bar, it appears there are three possible claims being made by Mrs. Thomas for loss of prospective business profits: (1) a claim for loss of future profits relating to Mrs. Thomas' use of the property as a horse training facility[2]; (2) a claim for loss of future rental income based upon the alleged proposal Mrs. Thomas received to rent the horse training facility; and (3) a claim for loss of future rental income based upon the previous rental of horse stalls to Mr. Alpers.[3]

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to Mrs. Thomas and viewing all reasonable inferences in Mrs. Thomas' favor, the Court finds that HESI is entitled to summary judgment as to any claim for loss of future profits relating to Mrs. Thomas' use of the property as a horse training facility. It is undisputed that any use of the property as a horse training facility had stopped prior to when the

---

notes the continued vitality of the established business requirement. *See Cohlmia*, 693 F.3d at 1287 ("Oklahoma state law holds that when a party seeks to recover loss of future profits, the profits should be coming from an established business that shows with some certainty the future losses.").

[2] Upon review of Mrs. Thomas' response, it is unclear whether Mrs. Thomas is making any claim for damages for loss of future profits relating to the use of her property as a horse training facility.

[3] Upon review of Mrs. Thomas' response, it is unclear whether Mrs. Thomas is making any claim for damages for loss of future rental income based upon the previous rental of horse stalls to Mr. Alpers.

4

perchlorate contamination was made public in 2011. It is also undisputed that Mrs. Thomas' property has not been used as a horse training facility since the perchlorate contamination was made public in 2011. Based upon this undisputed evidence, the Court finds that it is clear that Mrs. Thomas does not have an "established" horse training and breeding business, and, thus, Mrs. Thomas cannot recover damages for loss of prospective business profits. Further, even if the Court were to assume that Mrs. Thomas had an established horse training and breeding business, the Court finds there is no evidence that such a business has been successfully conducted for such a length of time and has such a trade established that the profits therefrom are reasonably ascertainable. Finally, the Court finds that any award of damages for loss of prospective business profits in relation to using the property as a horse training facility would be based upon mere speculation and conjecture. Mrs. Thomas has presented no evidence from which a jury could formulate a reasonable approximation of damages. Mrs. Thomas has produced no evidence of any baseline profits she had before she was allegedly damaged, has produced no evidence regarding her costs, such as feed and labor, to formulate a calculation of profit, and has produced absolutely no financial information that would support her claim.

Additionally, the Court finds that HESI is entitled to summary judgment as to any claim for loss of future rental income based upon the alleged proposal Mrs. Thomas received to rent the horse training facility. The only evidence that Mrs. Thomas submits in support of this claim is her own deposition testimony[4] and an unauthenticated letter from Ms. Linda Roller, the woman who

---

[4]Mrs. Thomas' testimony regarding what Ms. Roller said constitutes inadmissible hearsay.

allegedly offered to rent the horse training facility.[5] It is undisputed that any offer to rent that was made was oral and that there is no written documentation of any offer, discussions, or negotiations between Mrs. Thomas and Ms. Roller. Further, even if the Court assumes that Mrs. Thomas has set forth sufficient evidence of an offer from Ms. Roller, the Court finds that HESI is entitled to summary judgment because Mrs. Thomas has failed to set forth sufficient evidence that would allow the jury to reasonably calculate damages without speculating or guessing. While Mrs. Thomas has presented some evidence that Ms. Roller offered to pay $2500 per month for renting the barns, pastures, and equipment related to the training and boarding of horses on Mrs. Thomas' property, Mrs. Thomas has presented no evidence as to what her profits would have been. Mrs. Thomas has presented no evidence as to what her costs would have been, as to who would be responsible for paying for electricity and/or insurance, and as to what her maintenance costs would be. Thus, the jury would be left to speculate whether Mrs. Thomas would make $100 per month in profit on the purported $2500 in revenue, would make $2000 per month, or would, in fact, lose money. Additionally, a jury would have to speculate as to how long Ms. Roller would have, in fact, rented the facilities.

---

[5]The letter provides:
    To whom it may concern:
    Pursuant to a conversation with Ann Thomas, Sept. 2011, I offered
    her $2500.00 per month rental of barns, pastures and equipment
    related to the training and boarding of horses on her property.
    In addition to the monetary amount of $2500.00, I further offered to
    pay the monthly electric and the property insurance, per year.
Linda Andrews Roller Letter, attached as Exhibit 2 to Plaintiff's Response to Defendant's Motion for Summary Judgment on the Loss of Prospective Business Profits Claim of Plaintiff, Ann Thomas, and Supporting Brief.

Finally, the Court finds that HESI is entitled to summary judgment as to any claim for loss of future rental income based upon the previous rental of horse stalls to Mr. Alpers. While the Court finds that Mrs. Thomas has submitted sufficient evidence to create a genuine dispute as to whether the rental of horse stalls was an established business, the Court finds that Mrs. Thomas has not submitted sufficient evidence to establish the fact of damage with reasonable certainty – Mrs. Thomas has not submitted sufficient evidence to show that the alleged perchlorate contamination caused Mr. Alpers to stop renting Mrs. Thomas' horse stalls. In fact, Mrs. Thomas has presented no admissible evidence as to the reason why Mr. Alpers stopped renting Mrs. Thomas' horse stalls. Additionally, the Court finds that Mrs. Thomas has failed to set forth sufficient evidence that would allow the jury to reasonably calculate damages without speculating or guessing. While Mrs. Thomas has presented some evidence that she charged $100 per month per horse to rent her horse stalls, Mrs. Thomas has presented no evidence as to what her profits would have been. Mrs. Thomas has presented no evidence as to what her costs, i.e., feed, labor, maintenance, etc., would have been. Thus, the jury would be left to speculate whether Mrs. Thomas would make $10 per month in profit on the purported $100 in revenue, would make $80 per month, or would, in fact, lose money. Additionally, a jury would have to speculate as to how long Mr. Alpers would have continued to rent the stalls and how many horses he would have kept in the stalls.

IV.     Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS HESI's Motion for Summary Judgment on the Loss of Prospective Business Profits Claim of Plaintiff Ann Thomas [docket no. 101].

**IT IS SO ORDERED this 19th day of June, 2015.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE